IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHERRY VANEK, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CV3223 |
| | ) | |
| v. | ) | |
| | ) | |
| I.I., Inc., | ) | MEMORANDUM AND ORDER ON |
| | ) | PENDING MOTIONS |
| Defendant. | ) | |
| | ) | |

On September 26, 2006, the plaintiff, Sherry Vanek, filed a three-count amended complaint against Defendant I.I., Inc., alleging that the defendant discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, et seq., and the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat §§ 48-1001 et seq. (Count I); discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e et seq. (Count II); and retaliated against her in violation of Title VII (Count III). (See generally Am. Compl., filing 3.) The defendant has filed a motion for summary judgment on each of the plaintiff's claims. (See filing 28.) The plaintiff consents to the dismissal of her retaliation claim and stipulates that her gender discrimination claim is not based upon a hostile work environment theory, (see Pl.'s Br., filing 52 at 1, 21, 25), but otherwise resists the defendant's motion. My analysis of the defendant's motion, along with a number of ancillary motions that it has spawned, (see filings 37, 72, 80), is set forth below.

1

## I. BACKGROUND[1]

The defendant is a Nebraska corporation that owns and operates the Villager Courtyard & Gardens Hotel (the Villager), which is located at 5200 "O" Street in Lincoln, Nebraska. (Def.'s Index, filing 29, Ex. 2, Bazan Aff. ¶¶ 3, 7.) James and Jo Levitt are the defendant's directors and owners. (Id., Ex. 2, Bazan Aff. ¶ 4; id., Ex. 7, Levitt Aff. ¶ 2; Pl.'s Index, filing 53, Ex. 4, Levitt Dep. at 6:2-3.) Jeff Ford served as the General Manager of the Villager from early 2004 through October 2006, (Def.'s Index, filing 29, Ex. 7, Jo Levitt Aff. ¶ 12), and Jason Johnson was the

---

[1]The facts set forth below have been gleaned from the statements of facts set forth in the parties' briefs, and the evidence is "taken in the light most favorable to the nonmoving party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).

In its reply brief, the defendant submits that the plaintiff's statement of facts does not conform to the requirements of the applicable local rules. (See Def.'s Reply Br., filing 68, at 2-3 (citing NECivR 56.1).) In response, the plaintiff has filed a motion for leave "to supplement and/or amend her summary judgment opposition brief in the event that the Court would determine that Plaintiff's 'pinpoint references' in her brief in opposition to Defendant's summary judgment motion are inadequate (as alleged by Defendant)." (Mot. for Leave, filing 72, at 1.)

The plaintiff's brief contains two "statements of facts." (See Pl.'s Br., filing 52, at 1-11.) The first of these "statements" purports to be the plaintiff's response to the defendant's statement of facts, but it does not satisfy the requirements of NECivR 56.1(b)(1). (See, e.g., Pl.'s Br., filing 52, Pl.'s Response to Def.'s Statement of Facts ¶¶ 19-20.) The plaintiff's counsel is advised that in the future, her responses to statements of facts should include pinpoint references to evidentiary materials "in the case of any disagreement." NECivR 56.1(b)(1). I note, however, that in this case the plaintiff agrees with most of the facts submitted by the defendant. The second "statement" appearing in the plaintiff's brief is titled "Plaintiff's Statement of Genuine Issues of Material Fact in Dispute," and it lists all the facts that the plaintiff deems to be material. This statement, which is neither required nor prohibited under the local rules, includes citations to evidentiary materials, and it compensates somewhat for the shortcomings of the plaintiffs' Rule 56.1(b)(1) response.

Although the defendant's objections to the plaintiff's response brief are not without merit, the plaintiff's statements of facts–taken together–are adequate in this particular case, and it seems to me that little would be gained by delaying the progression of this litigation while the plaintiff repairs a small number of paragraphs within her response to the defendant's statement of facts. Therefore, the plaintiff's motion to amend will be denied as moot.

2

Villager's General Manager from July 2001 through December 2003, (Pl.'s Index, filing 53, Ex. 3, Johnson Dep. at 5:25-6:6).

A bar and grill known as "Sadie's Saloon," or "Sadie's," is located on the premises of the Villager and is owned and operated by the defendant. (Def.'s Index, filing 29, Ex. 2, Bazan Aff. ¶ 3; id., Ex. 3, Am. Compl. ¶ 8.) In July 2001, the plaintiff was hired as Sadie's manager. (E.g., id., Ex. 7, Jo Levitt Aff. ¶ 10.) Her responsibilities included ordering liquor, keeping inventory, organizing the wait staff, tending bar, writing Keno, greeting and seating customers, waiting tables, and working Tuesday through Saturday from 3:30 p.m. to 1:00 a.m. (Id., Ex. 4, Vanek Dep. at 21:9-19, 55:24-56:2; id., Ex. 7, Jo Levitt Aff. ¶ 20.) Her immediate supervisor was Jeff Ford. (Id., Ex. 1, Pl.'s Answers to Def.'s First Set of Interrogatories, ¶ 4.) It is undisputed that the plaintiff's work performance was satisfactory throughout the time of her employment with the defendant. (See Def.'s Br., filing 30, Statement of Facts ¶ 25; Pl.'s Br., filing 52, Response to Def.'s Statement of Facts ¶ 25.)

Sometime in 2003, Jo Levitt asked Jason Johnson to rewrite a retirement policy that had been in place at the Villager. (Pl.'s Index, filing 53, Ex. 3, Johnson Dep. at 17:3-18.) The policy set a mandatory retirement age at seventy, though there were some employees older than seventy working at the Villager. (Id., Ex. 3, Johnson Dep. at 17:3-6; 36:13-19.) Levitt wanted Johnson to rewrite the policy to lower the retirement age to sixty or sixty-five "to get rid of some of those older people." (Id., Ex. 3, Johnson Dep. at 18:15-24, 33:3-12.) Johnson refused Levitt's request, telling her, "[Y]ou can't do that." (Id., Ex. 3, Johnson Dep. at 23:10-21.)

From early 2005 through March or April 2005, Joseph Van Arsdale worked at Sadie's as a bartender. (Pl.'s Index, filing 53, Ex. 2, Van Arsdale Dep. at 4:15-5:22.) The plaintiff was Van

3

Arsdale's direct supervisor. (Id., Ex. 2, Van Arsdale Dep. at 6:22-7:3.) Van Arsdale described himself as being "like an assistant manager without being an assistant manager." (Id., Ex. 2, Van Arsdale Dep. at 6:13-14.) His responsibilities included making drinks, seating customers, handling problems that arose on his shift, and, occasionally, closing the bar. (Id., Ex. 2, Van Arsdale Dep. at 6:7-13.) While the plaintiff was away on vacation during, approximately, the early half of March 2005, Ford asked Van Arsdale to make up a "side-work list." (Id., Ex. 2, Van Arsdale Dep. at 8:2-24.) Ford also told Van Arsdale "a couple of different times" that he wanted to bring in a younger crowd and that the plaintiff "was more old school." (Id., Ex. 2, Van Arsdale Dep. at 7:12-18.) Van Arsdale did not hear Ford use the term "old school" to refer to anyone but the plaintiff. (Id., Ex. 2, Van Arsdale Dep. at 17:23-18:2.)

In late March 2005, Jo Levitt asked the plaintiff how old she was. (Pl.'s Index, filing 53, Ex. 1, Vanek Dep. at 34:21-36:8.) The plaintiff responded that she was fifty-six years old, and Levitt replied, "I didn't think you were that old." (See id.) One or two days later, on or about March 24, 2005, Jo Levitt, Jeff Ford, and the plaintiff met in a boardroom at the Villager. (E.g., Def.'s Index, filing 29, Ex. 3, Am. Compl. ¶ 10; id., Ex. 4, Vanek Dep. at 11:10-22, 14:16-22.) Jo Levitt told the plaintiff that Sadie's was going to be closed; that it was "old and tired," that Levitt could not afford to employ the plaintiff any longer, and that the plaintiff's employment would be terminated. (Id., Ex. 4, Vanek Dep. at 13:7-22.) The plaintiff replied by stating that "she knew it was going to be coming" because Ford "didn't like her from the beginning," that it was Ford's fault if any of the liquor inventory was missing, and that she was being terminated because of her age. (Pl.'s Index, filing 54, Ex. 5, Ford Dep. at 40:25-41:4.) She then cursed at Levitt and Ford, kicked the door, and walked out. (Id. at 41:4-5.) Neither Levitt nor Ford

4

responded to the plaintiff as she left. (Id. at 41:12-19.)

It is undisputed that the plaintiff, who was born on December 9, 1948, was the oldest manager employed by the defendant at the time of her termination. (Pl.'s Index, filing 53, Ex. 1, Vanek Dep. at 7:16-17; id., filing 54, Ex. 5, Ford Dep. at 20:3-13.) Jo Levitt maintains that she alone made the decision to terminate the plaintiff and that Ford did not have any input. (Pl.'s Index, filing 53, Ex. 4, Jo Levitt Dep. at 15:25-16:5.) Ford states that he did have input into the decision to fire the plaintiff, though it appears that his input consisted of a mere expression of agreement with the decision to close Sadie's, renovate it, and then reopen it. (Id., filing 54, Ex. 5, Ford Dep. at 39:9-20.)

After the plaintiff's termination, Ford told Van Arsdale that Sadie's would be closing, that a new restaurant would be opening "up front," and that Van Arsdale would have a job "over there." (Pl.'s Index, filing 53, Ex. 2, Van Arsdale Dep. at 15:12-21.) Ford also told Van Arsdale that he could help with the scheduling and ordering and that he could have some of the plaintiff's hours if he wanted them. (Id., Ex. 2, Van Arsdale Dep. at 15:21-23, 16:20-25.) Approximately one week after the plaintiff's termination, however, Van Arsdale quit his employment with the defendant. (Id., Ex. 2, Van Arsdale Dep. at 7:4-6.)

It is undisputed that Sadie's, and the Villager generally, were in poor financial condition at all relevant times. (See Def.'s Br., filing 30, Statement of Facts ¶¶ 18-19; Pl.'s Br., filing 52, Pl.'s Statement of Facts ¶¶ 3, 29.) It is also undisputed, however, that Sadie's did not close, (Pl.'s Index, filing 53, Ex. 4, Jo Levitt Dep. at 22:21-24), and that renovations have not taken place, (Pl.'s Index, filing 54, Ex. 5, Ford Dep. at 69:7-18). One day prior to the plaintiff's termination, Jo Levitt fired Beulah Claypool, a housekeeper whose primary duty was cleaning

5

Sadie's during the day. (Pl.'s Index, filing 54, Ex. 5, Ford Dep. at 77:9-22.) Apart from the plaintiff and Claypool, who was born on January 29, 1936, (see id.), no other employees were fired as a direct result of the plan to close Sadie's. (Id., filing 54, Ford Dep. at 125:2-11.) However, a number of younger individuals[2] were hired to work in "service" positions at Sadie's between May 2005 and August 2005. (Pl.'s Index, filing 54, Ex. 5, Ford Dep. at 70:11-75:20; id., filing 54, Ex. 5, Ford Dep., Dep. Ex. 18.)

In late 2006 or early 2007, Jeff Ford left a note on the plaintiff's front door. (Pl.'s Index, filing 53, Ex. 1, Vanek Dep. at 24:14-25:8.) Ford decided to leave this note because he did not believe that the plaintiff "was terminated in the proper way." (Def.'s Supp. Index, filing 69, Ex. 12, Ford Dep. at 42:18-24.) More specifically, he believed that the plaintiff's termination was not "legitimate" because the plaintiff "could have been allowed to . . . eliminate the inventory in the bar during Jo Levitt's proposal of closing the bar." (Pl.'s Index, filing 54, Ex. 5, Ford Dep. at 43:9-17.) He added, however, that he left the note for the plaintiff in part because he "was a little bitter at some of the things that the Villager Hotel had said about [him or] to [him] after [his] departure." (Def.'s Supp. Index, filing 69, Ex. 12, Ford Dep. at 42:18-24.) The contents of this note are not clear. After finding the note, however, the plaintiff called Ford on the telephone. (See id., Ex. 1, Vanek Dep. at 24:14-25:8.) According to the plaintiff, Ford said during their telephone conversation that the plaintiff was truly fired from Sadie's because she "was too old," and that someone–presumably Jo Levitt–"wanted to turn it into a college bar." (Pl.'s Index, filing 53, Ex. 1, Vanek Dep. at 25:9-20.)

---

[2]The oldest of these employees was born on July 9, 1967. (Pl.'s Index, filing 54, Ex. 5, Ford Dep., Dep. Ex. 18.) Most were born between 1982 and 1986, and it appears that all were females. (See id.)

The plaintiff has filed charges of discrimination with the Nebraska Equal Opportunity Commission (NEOC), (Def.'s Index, filing 29, Ex. 5, at 2-5), and the defendant has not argued that the plaintiff's gender or age discrimination claims are subject to dismissal on the ground that the plaintiff has failed to comply with administrative prerequisites.[3]

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not

---

[3]Each party's summary judgment brief includes references to findings made by the NEOC following its investigation of the plaintiff's claims, (see Def.'s Br., filing 30, Statement of Facts ¶¶ 28-29; Pl.'s Br., filing 52, Response to Def.'s Statement of Facts ¶ 30), and each party has filed an unopposed motion to strike the opposing party's references to those findings, (see Pl.'s Mot. to Strike, filing 37; Def.'s Mot. to Strike, filing 80). These motions will be granted, and I shall disregard the briefs' references to the NEOC's findings.

rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

### III. ANALYSIS

The defendant argues that it is entitled to summary judgment on the plaintiff's gender and age discrimination claims. The defendant's arguments with respect to each claim will be analyzed separately below.

#### A. Gender Discrimination

The defendant argues first that it is entitled to summary judgment on the plaintiff's gender discrimination claim because the plaintiff is unable to establish a prima facie case of "disparate treatment" gender discrimination. (See Def.'s Br., filing 30, at 14-17.) I agree.

The plaintiff does not argue that her gender discrimination claim is supported by direct evidence; therefore, her claim must be analyzed under the McDonnell Douglas burden-shifting framework. See, e.g., Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

> To survive the motion for summary judgment, [the plaintiff] must present a prima facie case of gender discrimination, which requires proof in the record that: (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination. Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 760-61 (8th Cir. 1998). . . . Once the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas v. Green, 411 U.S. 792, 804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Upon such a showing, the burden shifts back to the employee to show that the employer's reason was pretextual. McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. 1817.

Wells v. SCI Mgmt., L.P., 469 F.3d 697, 700-01 (8th Cir. 2006).

The plaintiff's ability to establish elements one, two, and three of a prima facie case is uncontested. (Def.'s Br., filing 30, at 15.) The defendant argues, however, that the plaintiff cannot satisfy element four because she cannot show that she was treated differently than a similarly-situated male employee. (Id.) In response, the plaintiff argues that she can establish element four of her prima facie case by showing that her former "position remained open or was filled by similarly qualified applicants outside the protected class." (Pl.'s Br., filing 52, at 22 (quoting Lettieri v. Equant Inc., 478 F.3d 640, 646 (4th Cir. 2007)).) She submits that she has made this showing by demonstrating that "Jeff Ford offered Plaintiff's position to twenty five year old male employee . . . Joe Van Arsdale," (id.).

Preliminarily, I must address the parties' disagreement regarding the showing that the plaintiff must make in order to establish element four of her prima facie case. It is true, as the defendant suggests, that plaintiffs typically satisfy the fourth element of a prima facie case of gender discrimination by showing that they were "treated differently from similarly situated males." Wells v. SCI Mgmt., L.P., 469 F.3d 697, 701 (8th Cir. 2006) (citing Turner v. Gonzalez, 421 F.3d 688, 694 (8th Cir. 2005)). Plaintiffs are not required to make this particular showing, however, in order to establish a prima facie case. "Title VII has been interpreted to require only that, in addition to the first three elements of the McDonnell Douglas test, a plaintiff show that his or her discharge occurred under circumstances which create an inference of unlawful discrimination." Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994). Moreover, the Eighth Circuit has held specifically that in a Title VII "discharge" case, a plaintiff may establish element four by showing that she was "replaced by a person with similar

9

qualifications." Fjelsta v. Zogg Dermatology, PLC, 488 F.3d 804, 810 (8th Cir. 2007) (quoting Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003)). The court added, however, that if the plaintiff cannot show that she was replaced, she can meet her prima facie burden only if there is "'some additional showing' that discrimination was a factor in the termination." Id. (quoting Putman, 348 F.3d at 736). This "additional showing" is sometimes based on evidence of pretext (which is ordinarily considered during the third phase of the burden-shifting framework), and pretext, in turn, is often established using evidence that similarly situated employees received more favorable treatment. Putman, 348 F.3d at 736. With this significant modification, the rule advocated by the plaintiff is a reasonably accurate statement of the law in this circuit with respect to prima facie element four.[4]

The plaintiff has failed, however, to make a showing that satisfies element four of a prima facie case of gender discrimination. As noted above, the plaintiff argues that she has made the requisite showing because "the defendant . . . offered Ms. Vanek's job to a less qualified male employee," i.e., Van Arsdale. (Pl.'s Br., filing 52, at 22.) Yet the evidentiary materials cited by the plaintiff do not show that Ford offered the plaintiff's position to Van Arsdale (or anyone else). Although the plaintiff states in her deposition that Van Arsdale told her that Ford told Van Arsdale that he (Van Arsdale) would get the plaintiff's job, (Pl.'s Index, filing 53, Ex. 1, Vanek

---

[4]To be precise, the plaintiff's rule differs from Eighth Circuit law in at least one other respect. The Eighth Circuit has "noted that it is entirely plausible that a woman discharged and replaced by another woman will be able to establish that she was the object of impermissible discrimination based on gender." Williams, 14 F.3d at 1308 (citing Walker v. St. Anthony's Medical Center, 881 F.2d 554, 558 (8th Cir. 1989)). Thus, to the extent that the plaintiff's rule requires a showing that the plaintiff was replaced by someone "outside the protected class," (Pl.'s Br., filing 52, at 22 (quoting Lettieri v. Equant Inc., 478 F.3d 640, 646 (4th Cir. 2007))), it is inconsistent with Eighth Circuit law.

Dep. at 122:10-123:18), her testimony appears to be based upon hearsay, which cannot serve to defeat a motion for summary judgment. See, e.g., Twymon v. Wells Fargo & Co., 462 F.3d 925, 930 n.3 (8th Cir. 2006) (citing Shaver v. Indep. Stave Co., 350 F.3d 716, 723 (8th Cir. 2003)). Her testimony is also unsubstantiated. Van Arsdale did not state in his deposition that he was offered the position of manager at Sadie's. Instead, he stated that Ford told him that he would have a job at the new restaurant that would be opening at the Villager, and that he could "help with the scheduling, ordering, stuff like that to get the place started." (Pl.'s Index, filing 53, Ex. 2, Van Arsdale Dep. at 15:16-23.) Van Arsdale also said that Ford told him that he could have some of the plaintiff's hours if he wanted them. (Id., Ex. 2, Van Arsdale Dep. at 16:20-25.) Although it is true that the plaintiff did scheduling and ordered liquor for Sadie's, there is no indication that Van Arsdale was offered a position that would require him to take on the plaintiff's responsibilities for keeping inventory, writing Keno, and waiting tables–either at Sadie's or the new restaurant. In short, the evidence submitted by the plaintiff does not show that there is a genuine issue whether the defendant offered the plaintiff's job to Van Arsdale.

   I note in passing that even if the evidence cited by the plaintiff established that the defendant offered the plaintiff's job to Van Arsdale, this would be insufficient to satisfy the plaintiff's prima facie burden. Although a plaintiff can meet her burden without showing that she was actually replaced by a person with similar qualifications, in "reduction-of-force cases" she must make "'some additional showing' that discrimination was a factor in the determination." Fjelsta v. Zogg Dermatology, PLC, 488 F.3d 804, 810 (8th Cir. 2007) (quoting Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003)). The plaintiff has not argued

11

that such a showing can be made in this case.[5]

"The burden of establishing a prima facie case of disparate treatment is not onerous." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Nevertheless, I conclude that the plaintiff has failed to present a prima facie case of gender discrimination. The defendant is therefore entitled to summary judgment on Count II of the amended complaint.

### B. Age Discrimination

The plaintiff has alleged that the defendant has discriminated against her on the basis of her age in violation of the ADEA, 29 U.S.C. §§ 621, et seq., and the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat §§ 48-1001 et seq. The defendant argues that it is entitled to summary judgment on the plaintiff's age discrimination claims. (See Def.'s Br., filing 30, at 29-37.) For the following reasons, however, I find that the defendant is not entitled to summary judgment on these claims.

Preliminarily, I note that the parties seem to agree that because the Nebraska Supreme Court looks to federal decisions interpreting the ADEA when applying the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, the fate of the plaintiff's state

---

[5]The plaintiff has argued that the defendant's alleged nondiscriminatory reasons for terminating her were pretextual, (see Pl.'s Br., filing 52, at 22-25), and, as noted above, evidence of pretext can sometimes satisfy the "additional showing" requirement in reduction of force cases, see Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003). In order to prove pretext, however, "a plaintiff must both discredit an employer's asserted reason for termination and show that the circumstances permit drawing the reasonable inference that the real reason for terminating the plaintiff was her [gender]." Twymon v. Wells Fargo & Co., 462 F.3d 925, 935 (8th Cir. 2006) (citing Johnson v. AT & T Corp., 422 F.3d 756, 763 (8th Cir. 2005)). However thoroughly the plaintiff may have discredited the defendant's asserted reasons for terminating her, she has referred me to no evidence that would support an inference that the defendant terminated her because of her gender. (See Pl.'s Br., filing 52, at 22-25.) Because her evidence of pretext is insufficient as a matter of law, the plaintiff has failed to make an "additional showing" that would satisfy her prima facie burden.

law age discrimination claim is bound to that of her ADEA claim. (See Def.'s Br., filing 30, at 29-30 (citing Billingsley v. BFM Liquor Mgmt., Inc., 645 N.W.2d 791 (Neb. 2002); Humphrey v. Neb. Public Power Dist., 503 N.W.2d 211 (Neb. 1993)). I also note that the parties rely almost exclusively on federal decisions in their briefs. My analysis of the defendant's motion is based, therefore, on federal law.

In opposition to the defendant's motion, the plaintiff argues that summary judgment is improper because she has come forth with direct evidence of unlawful age discrimination. In the alternative, she argues that summary judgment is not appropriate under the McDonnell Douglas burden-shifting framework. I shall consider each of the plaintiff's arguments in turn.

"[I]f [a] plaintiff produces direct evidence that an illegitimate criterion, such as [age], 'played a motivating part in the employment decision,'" she need not proceed under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S.792 (1973). Cronquist v. City of Minneapolis, 237 F.3d 920, 924 (8th Cir. 2001) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989)). See also Lee v. Rheem Mfg. Co., 432 F.3d 849, 852-53 (8th Cir. 2005); Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). Instead, "the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination." Cronquist, 237 F.3d at 924. "Direct evidence in this context is not the converse of circumstantial evidence." Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1034 (8th Cir. 2007) (quoting Griffith, 387 F.3d at 736). Rather, it "is 'evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment

13

action.'" Lee, 432 F.3d at 853 (quoting Russell v. City of Kansas City, Missouri, 414 F.3d 863, 866 (8th Cir. 2004)).  In other words,

> [d]irect evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference.  For example, "'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself'" will not suffice.

Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999) (citations omitted).  See also Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1042-43 (8th Cir. 2007); United States Equal Employment Opportunity Comm'n v. Hopkins, 471 F.3d 891, 894-95 (8th Cir. 2006).

The plaintiff argues that the following facts constitute direct evidence of age discrimination:

> The night or two before Sherry Vanek's termination, Jo Levitt asked her how old she was.  When Vanek replied "56," Levitt told Vanek that she didn't think she was that old.  After Mr. Ford left his employment with the Defendant, he told the Plaintiff that she had been fired from Sadie's because of her age.

(Pl.'s Br., filing 52, at 16.)  In addition, she lists a number of other statements and actions by Ford and Levitt that do not bear directly upon the decision to fire the plaintiff, but that, in her view, establish Ford and Levitt's discriminatory attitudes.  (See id. at 17-19.)  She refers, for example, to Levitt's attempt to have Ford's predecessor, Jason Johnson, rewrite the defendant's mandatory retirement policy in 2003 in order to "get rid of two older employees"; Ford's statements to Van Arsdale that the plaintiff was "old school" and that he wanted to attract a

14

younger crowd to Sadie's; the firing of Beulah Claypool (who was born in 1936) shortly before the plaintiff's termination; the continuous operation of Sadie's despite Levitt's alleged plan to close the restaurant; and the hiring of several younger "service"employees in the months following the plaintiff's termination. (See id.) In reply, the defendant disputes the plaintiff's evidence and advances several challenges to the weight that the plaintiff's evidence ought to be afforded. (See Def.'s Reply Br., filing 68, at 10-13.)[6]

It is a close question whether the plaintiff has presented direct evidence of discrimination sufficient to satisfy the Price Waterhouse standard. Most of the evidence cited by the plaintiff does not relate directly to the decision to fire the plaintiff, but rather to the context in which that decision was made. However, the plaintiff has testified that in late 2006 or early 2007, Jeff Ford, who was the plaintiff's former supervisor and who had some involvement in the decision to terminate her, contacted the plaintiff and told her that she was truly fired because of her age. This is evidence of a specific link between Levitt's alleged discriminatory animus and the plaintiff's termination. I note that the foundation of Ford's statement is unclear–that is, I cannot determine whether his statement is based on anything more than his opinion or inferences about Levitt's decision-making process. I also note that although Ford testified that he did not believe the plaintiff's termination was "legitimate," he did not confirm that he told the plaintiff that she

---

[6]In analyzing a motion for summary judgment, it is not ordinarily the court's role to evaluate the strength of the parties' evidence; rather, the evidence is viewed in a light favorable to the nonmoving party. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). An evaluation of the strength of a plaintiff's evidence must be undertaken, however, in order to determine whether she has come forth with "direct" evidence of discrimination. Indeed, the Eighth Circuit has stated that "'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004) (emphasis added). See also Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1042 (8th Cir. 2007).

15

was terminated because of her age. Nevertheless, Ford's alleged statement to the plaintiff represents "potential eyewitness testimony," and the trier of fact should determine whether the plaintiff's description of her conversation with Ford ought to be credited. Equal Employment Opportunity Comm'n v. Liberal R-II School Dist., 314 F.3d 920, 924 (8th Cir. 2002). In addition, it is relevant that the plaintiff's "self-serving testimony of what [Ford] told him does not stand alone." Id. There is evidence that Levitt asked the plaintiff her age and commented, "I didn't think you were that old," shortly before firing her; that the plaintiff had been referred to as "old school" by her direct supervisor; that Levitt's original explanation for the plaintiff's termination–i.e., that Sadie's would be closed, has proven to be false; that the only other employee who was terminated as a result of the "plan" to close Sadie's was born in 1936; that within months of the plaintiff's termination, several young service employees were hired to work at Sadie's; and that in 2003, Levitt had expressed a desire to "get rid of" older employees through the use of a mandatory retirement policy. I do not suggest that each of these facts would amount to direct evidence of age discrimination when taken in isolation. Taken together, however, they add significant strength to the plaintiff's claim that Ford's alleged admission constitutes direct evidence that age discrimination played a motivating part in the decision to terminate the plaintiff.

     I find that the plaintiff has produced "evidence of conduct [and] statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely that not was a motivating factor in the employment decision." Liberal R-II School Dist., 314 F.3d at 923 (quoting Erickson v. Farmland Indus., Inc., 271 F.3d 718, 724 (8th Cir. 2001)).

16

Genuine issues of material fact remain to be resolved by the trier of fact, and the defendant's motion for summary judgment on the plaintiff's age discrimination claims must be denied.

Because the plaintiff has presented direct evidence of age discrimination, I need not address whether the plaintiff's evidence satisfies the McDonnell Douglas standard. Liberal R-II School Dist., 314 F.3d at 926. Nevertheless, I have elected to analyze the plaintiff's age discrimination claims under the McDonnell Douglas burden-shifting framework. For the following reasons, I find that even if the plaintiff had not produced direct evidence of age discrimination, it would be necessary to deny the defendant's motion for summary judgment.

To establish a prima facie case of age discrimination under McDonnell Douglas, the plaintiff must show (1) that she is within a protected class–i.e., that she was at least forty years old; (2) that she was meeting the defendant's job expectations; (3) that she suffered an adverse employment action; and (4) that there are facts that give rise to an inference of unlawful age discrimination. See Stidham v. Minnesota Mining & Mfg., Inc., 399 F.3d 935, 938 (8th Cir. 2005); Walton v. McDonnell Douglas Corp., 167 F.3d 423, 427 (8th Cir. 1999). See also Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1164-66 (8th Cir. 1985) (noting that the McDonnell Douglas framework applies in ADEA cases and discussing the elements of an ADEA prima facie case). The defendant has conceded that the plaintiff can satisfy elements one through three, but argues that the plaintiff cannot satisfy element four because she cannot establish that she was replaced by a younger employee. (See Def.'s Br., filing 30, at 31-32.) In this circuit, however, plaintiffs are not required to make this particular showing in order to establish a prima facie case of age discrimination. Indeed, the Eighth Circuit has specifically rejected the notion that it is impossible to establish prima facie cases of age discrimination when terminated employees are

not replaced, but their former duties are instead absorbed by other workers. See Holley, 771 F.3d at 1165-66.

A plaintiff can establish facts that give rise to an inference of unlawful age discrimination, and thereby satisfy element four of a prima facie case, "by presenting either statistical evidence (such as a pattern of forced early retirement or failure to promote older employees) or 'circumstantial' evidence (such as comments and practices that suggest a preference for younger employees)." Stidham, 399 F.3d 938 (quoting Chambers v. Metro. Prop & Cas. Ins. Co., 351 F.3d 848, 856 (8th Cir. 2003)). In this case, the plaintiff has presented evidence of "comments and practices that suggest a preference for younger employees" that is more than sufficient to establish her prima facie burden. This evidence has been summarized above and need not be repeated here.

Because the plaintiff has established a prima facie case of age discrimination, the burden shifts to the defendant to come forward with evidence of a legitimate, nondiscriminatory reason for terminating the plaintiff. See, e.g., Walton v. McDonnell Douglas Corp., 167 F.3d 423, 427 (8th Cir. 1999) The defendant has done so. Specifically, the defendant submits that the plaintiff was terminated as part of a cost-reducing reduction of force. (See Def.'s Br., filing 30, at 33-34.) I find, however, that the plaintiff has demonstrated that "there is a genuine factual controversy regarding whether the legitimate, nondiscriminatory reason is a pretext for an intent to discriminate based on age." Lee v. Rheem Mfg. Co., 432 F.3d 849, 854 (8th Cir. 2005). Although there is no dispute that Sadie's had been facing financial difficulties for quite some time, it is also undisputed that the plaintiff and Beulah Claypool were the only employees who were terminated as a result of the defendant's cost-cutting plan; that Sadie's was not closed and

18

remodeled, as the plaintiff had been told upon her termination; and that several young employees were hired within months of the plaintiff's termination. This evidence, particularly when combined with evidence that Levitt fired the plaintiff shortly after asking her age, Ford's alleged statement to the plaintiff in late 2006 or early 2007 that the plaintiff was truly fired because of her age, and references to the plaintiff as "old school," is sufficient to discredit the defendant's proffered nondiscriminatory reason for terminating the plaintiff and to sustain a reasonable inference that the plaintiff was actually terminated because of her age. Under these circumstances, summary judgment is not appropriate.

**IT IS ORDERED** that:

1. The plaintiff's motion to strike, filing 37, is granted;

2. The defendant's motion to strike, filing 80, is granted;

3. The plaintiff's motion for leave to supplement or amend her summary judgment response brief, filing 72, is denied as moot;

4. The plaintiff's retaliation claim, which is set forth in Count III of the amended complaint, is dismissed;

5. The defendant is entitled to summary judgment on the plaintiff's gender discrimination claim, which is set forth in Count II of the amended complaint; and

6. The defendant's motion for summary judgment, filing 28, is otherwise denied.

Dated August 8, 2007.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge